UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

John Michael Farnum,

                           Petitioner,

    v.

Robert LeGrand, *et al.*,

                          Respondents.

Case No. 2:13-cv-01304-APG-BNW

ORDER

## I.  BACKGROUND

Petitioner John Michael Farnum was convicted in Nevada state court of twelve counts of sexual assault with a minor under the age of fourteen, four counts of lewdness with a child under the age of fourteen, and one count of attempted lewdness with a child under the age of fourteen.

At trial, A.R., a nine-year-old girl, testified to numerous instances of sexual abuse committed against her by Farnum.  Additional evidence presented at trial showed the following background facts.  Farnum was involved in three-person sexual relationship with his wife, Alise Farnum,[1] and A.R.'s mother, Monica Zahniser.  Between 1998 and 2002, the three lived together off and on along with A.R. and Monica's son, S.R.  When the five were not living together, Monica and her kids would frequently spend time at Farnum and Alise's house.

In 1999, when she was four years old, A.R. told her mom that Farnum had been touching her on the vagina, but she subsequently recanted those statements.  In October 2000, when Monica caught her putting a crayon in her vagina, A.R. reported that Farnum had done the same thing with an item from a utensil drawer in the kitchen.  After a medical examination revealed no damage to A.R.'s genital area, Monica dismissed the matter.

Sometime between Thanksgiving and Christmas in 2002, while A.R. was playing with her friend K.S. in a bedroom at Farnum's house, Farnum had A.R. touch him on the penis in

---

[1] When testifying in state court, Ms. Farnum gave two different spellings for her first name, Alise (ECF No. 17-24 at 9) and Elisa (ECF No. 22-10 at 41).

front of K.S. and then asked K.S. to do the same.  K.S., who was nine years old at the time, refused his requests.  In January 2003, K.S. reported the incident to her mother, who immediately contacted the police.

The case went to trial and Farnum was convicted in April 2005.  On appeal, the Supreme Court of Nevada determined that Farnum should have been acquitted on two additional counts of sexual assault and three additional counts of lewdness but rejected his other arguments.

In April 2007, the state district court entered an amended judgment of conviction. Farnum did not appeal the amended judgment.  He stands convicted of ten counts of sexual assault with a minor under the age of fourteen, one count of lewdness with a child under the age of fourteen, and one count of attempted lewdness with a child under the age of fourteen.

In April 2008, Farnum filed a post-conviction habeas corpus petition in the state district court.  The district court denied the petition.  On appeal, the Supreme Court of Nevada remanded for an evidentiary hearing on Farnum's claims that trial counsel provided ineffective assistance by failing to investigate the case and failing to present a defense at trial.

In December 2011, after an evidentiary hearing, the state district court denied the petition again.  Farnum appealed and in January 2013, the Supreme Court of Nevada affirmed.  Farnum then initiated this federal habeas corpus proceeding.

Between July 2015 and January 2018, this case was stayed while Farnum pursued state court exhaustion of claims I determined to be unexhausted.  Farnum filed a second amended petition on January 29, 2018.  I dismissed several claims in that petition as procedurally defaulted.  The remaining claims are now before me for a decision on the merits.

II.  STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). The standard of review under AEDPA is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

2

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because de novo review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in de novo review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

III.  DISCUSSION

Farnum's remaining claims allege that his custody violates his constitutional rights because his trial counsel deprived him of effective assistance of counsel.  To establish a claim of ineffective assistance of counsel (IAC), a defendant must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under the first *Strickland* prong, whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id*. at 687-88.  Under the second prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  The reviewing court need not consider the performance component before prejudice component "or even address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697.

*Trial Counsel's Failure to Investigate*

In a section of his petition with the heading "failure to investigate," Farnum asserts a variety of claims that he was deprived of effective assistance of counsel because his trial counsel failed to adequately investigate his case. ECF No. 53 at 79-94.  Some of the claims are more fully developed in later portions of his petition under separate headings,[2] but the section includes

---

[2] I address those in separate sections below.

4

1   additional claims that counsel was ineffective because he conducted no independent

2   investigation, did not hire an investigator, and failed to seek psychological evaluations of A.R.

3   and K.S.

4          In addressing these allegations in Farnum's state post-conviction proceeding, the

5   Supreme Court of Nevada affirmed the state district court's findings that "counsel spent

6   substantial time consulting experts, conducting a mock trial, and evaluating the State's evidence,

7   and that his decision not to investigate in the manner that Farnum suggests was out of a

8   legitimate fear that doing so could have prejudiced the case as the results would be discoverable

9   or such efforts would be futile." ECF No. 22-34 at 4-5.  The court further concluded that Farnum

10  had failed to demonstrate that the results of the proceeding would have been different had

11  counsel conducted the additional investigation Farnum suggested. *Id*.

12         Farnum argues the state court's findings as to counsel's performance are unreasonable

13  because the record establishes that counsel consulted only one expert, the mock trial had nothing

14  to do with investigation, merely evaluating the State's evidence is insufficient, and

15  discoverability of potential evidence is not an acceptable justification for failing to investigate.

16  While these points are valid to some extent, Farnum has not shown a reasonable probability that

17  the outcome of his trial would have been different if counsel conducted additional investigation.

18         Farnum argues that he has established prejudice by identifying potential witnesses who

19  could "provide a number of indicators that Monica was untrustworthy, and that A.R. and K.S.

20  had psychological issues affecting their capacity for veracity and undermining the truth of their

21  allegations." ECF No. 74 at 9.  I disagree.

22         Testifying outside of each other's presence, A.R. and K.S. provided very consistent

23  testimony about the facts surrounding the incident in which Farnum attempted to have K.S. touch

24  his penis. ECF No. 17-11 at 6-7; ECF No. 17-13 at 10-12.  Farnum has not provided any credible

25  evidence that A.R.'s mental or emotional state may have impacted the veracity of her testimony.

26  The only "psychological issue" Farnum cites with respect to K.S. is testimony from her mother

27  that K.S. had Attention Deficit Hyperactivity Disorder (ADHD).  He has not demonstrated that

28  the disorder had any impact on K.S.'s ability to tell the truth when she testified at his trial.

1   Allegations and evidence regarding Monica's untrustworthiness center primarily on her

2   alleged history of making false allegations about A.R. being sexually abused by various people.

3   The reason counsel was not ineffective for failing to exploit that alleged history as impeachment

4   evidence is discussed below.  With respect to prejudice, the probative impact of Monica's

5   testimony was marginal in comparison to A.R.'s testimony describing in credible detail the

6   sexual acts committed against her by Farnum. ECF No. 17-12 at 10-16; ECF No. 17-13 at 1-13.

7   And the testimony of K.S. (ECF No. 17-11 at 4-8) and S.R., A.R.'s older brother, (ECF No. 17-

8   14 at 4-10) corroborated several facts included in A.R.'s testimony.

9   Thus, the Supreme Court of Nevada's decision finding lack of *Strickland* prejudice is

10   entitled to deference under §2254(d).  This claim is denied.

11   *Trial Counsel's Failure to Address Prior Allegations of Sexual Abuse*

12   Farnum alleges he was deprived of effective assistance of counsel because his trial

13   counsel failed to present evidence of prior or contemporaneous false accusations of sexual abuse.

14   According to Farnum, Monica had made allegations of A.R. being sexually abused by several

15   other people, including A.R.'s father, a former babysitter, her (Monica's) mother's boyfriend,

16   Farnum's brother, and Farnum's father.  Farnum contends effective trial counsel would have

17   requested a *Miller* hearing[3] to permit cross-examination and presentation of corroborative

18   evidence regarding the prior allegations.

19   In Farnum's state post-conviction proceeding, the Supreme Court of Nevada addressed

20   this claim as follows:

21   Farnum argues counsel was ineffective for failing to support the theory of
    defense by presenting evidence that A.R.'s mother made similar allegations
22   against multiple other men, that A.R. had been acting out sexually before and
    after meeting Farnum, and that A.R.'s testimony was inconsistent.  Farnum failed
23   to demonstrate deficiency or prejudice.  The district court found credible
    counsel's testimony that he attempted to present this evidence as much as he
24   could through cross-examining the State's witnesses rather than through witnesses
    with credibility issues, and that counsel made an informed, deliberate decision to
25   focus on the lack of evidence and inconsistencies with the victim's statements
    rather than distract the jury.  Farnum failed to demonstrate that counsel's
26

27   [3] This refers to the hearing required by *Miller v. State*, 779 P.2d 87, 90 (Nev. 1989).

28

6

> decisions fell below the reasonableness standard enunciated in *Strickland* or that it was likely the verdict would have otherwise been different. *See Dawson* [*v. State*, 825 P.2d 593, 595 (Nev. 1992)]; *see also Harrington*, 562 U.S. at ——, 131 S.Ct. at 790 ("To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates."). Accordingly, we conclude that Farnum is not entitled to relief on this claim.

ECF No. 22-34 at 6-7. The court also held as follows with respect to counsel not calling witnesses to discredit Monica:

> The district court determined that counsel made strategic choices not to call these witnesses for a variety of reasons-either because they were not credible, the testimony would not have been admissible, or the witness would have focused the jury's attention on the more sensational elements of the case that counsel was attempting to avoid. The decision whether to call a witness is a proper exercise of counsel's discretion and Farnum failed to demonstrate that counsel's decisions fell below the reasonableness standard enunciated in *Strickland* or that it was likely the verdict would have otherwise been different. *See Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002) (noting that "the trial lawyer alone is entrusted with decisions regarding legal tactics such as deciding what witnesses to call").

*Id.*

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

As an initial matter, I note that it was K.S.'s mother, not Monica, who originally contacted the police with an allegation that Farnum was sexually abusing A.R. Indeed, trial testimony established that Monica repeatedly ignored or downplayed indications that Farnum was abusing her daughter.

It is not certain that the trial judge would have permitted counsel to cross-examine Monica about statements she had allegedly made to others about A.R. being abused by individuals other than Farnum. And, to the extent such inquiry was permitted, it is unlikely Monica would have admitted to making such statements, in which case, the presentation of extrinsic evidence to attack her credibility would have been prohibited under Nevada law. *See* Nev. Rev. Stat. § 50.085(3); *Miller*, 779 P.2d at 90 ("[I]f the witness denies the past conduct,

extrinsic evidence to disprove the denial is generally not admissible."). While *Miller* provides an exception to § 50.085(3), its holding plainly applies to prior accusations made by the alleged victim of the sexual abuse (in this case A.R.), not those made by a corroborating witness. 779 P.2d at 89-90.

Thus, the Supreme Court of Nevada reasonably concluded that trial counsel's performance did not fall below the *Strickland* standard. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (counsel not ineffective for failing to offer inadmissible evidence). In addition, Farnum cannot establish a reasonable probability that the outcome of his trial would have been different had counsel attempted to present evidence of Monica's alleged prior statements. As noted above, it was A.R.'s testimony, not Monica's, that was the most damaging evidence to the defense. Thus, the Supreme Court of Nevada's decision is entitled to deference under §2254(d).

*Trial Counsel's Failure to Investigate School Records*

Farnum alleges he was deprived of effective assistance of counsel because his trial counsel failed to obtain information from schools and day care centers about the victims' reported behavioral problems. According to Farnum, this information would have shown that A.R. had a history of sexually acting out and other behavioral problems prior to meeting him. He does not specify what the information would have shown with respect to K.S.

This claim is wholly unsubstantiated. Farnum has not presented any evidence to the state court or this court showing that school records existed that would have supported his allegations or benefitted his defense. Accordingly, the claim is denied. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (denying IAC claim where petitioner "does nothing more than speculate that, if interviewed, [witness] might have given information helpful to [petitioner]").

*Trial Counsel's Failure to Investigate Daycare or School Sign-Out Records*

Farnum alleges he was deprived of effective assistance of counsel because his trial counsel failed to obtain sign-out records from A.R.'s school or day care. He claims these records would have shown that, contrary to testimony at trial, he picked up A.R. only once or twice at most from those locations. Here again, Farnum's claim lacks evidentiary support. He has not

demonstrated that such records existed, much less that they would have benefitted his defense in the manner he claims.  Thus, the claim is denied. *See id.*

*Trial Counsel's Failure to Present Evidence That Assaults Were Physically Impossible*

Farnum alleges he was deprived of effective assistance of counsel because his trial counsel failed to investigate and present evidence that it was physically impossible for him to have sexually assaulted A.R.  Specifically, he claims that, due to the unusually large size of his penis, he could not have penetrated A.R.'s vagina, rectum, and mouth 1½ to 2 inches, as she alleged, at least not without resulting in physical damage.

The Supreme Court of Nevada rejected this claim in Farnum's state post-conviction proceeding:

> Farnum argues that counsel's investigation was inadequate because counsel did not determine whether Farnum's penis was too large to penetrate the victim.  Farnum failed to demonstrate deficiency or prejudice.  The district court found credible counsel's testimony that he was aware of the size of Farnum's penis and made a strategic decision not to investigate further because his ultimate goal was to focus upon the State's lack of evidence rather than distract the jury with sensational facts. *Dawson v. State*, 108 Nev. 112, 117, 825 P.2d 593, 596 (1992) ("Strategic choices made by counsel after thoroughly investigating the plausible options are almost unchallengeable").  Farnum failed to demonstrate a reasonable probability that the results of the proceeding would have been different had counsel investigated this matter further.  Accordingly, we conclude that Farnum is not entitled to relief on this claim.

ECF No. 22-34 at 4.

Reviewed under § 2254(d), the state court's adjudication of the claim did not "result[] in a decision that was contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The state court's findings on this point are supported by counsel's testimony at the state post-conviction evidentiary hearing. ECF No. 22-8 at 43-49.  Trial counsel testified that he did not want to expose the jury to additional details about the sexual relationship between Farnum, Alise, and Monica. *Id*.  He also testified that "the size of Mr. Farnum's penis was irrelevant" and he "wanted to stay focused." *Id*. at 48-49.

While counsel opting to minimize the presentation of lurid sexual details may have been a reasonable strategy, I do not necessarily agree that the evidence would have been irrelevant, given that counsel's argument at trial focused, in large part, on the lack of physical evidence that A.R. had been sexually abused. *See* ECF No. 22-34 at 5 ("Counsel appropriately argued that the lack of physical corroboration raised a reasonable doubt as to whether any of the crimes occurred."). Even so, Farnum cannot show *Strickland*-level prejudice arising from counsel failing to present evidence about the size of Farnum's penis.

Farnum was convicted of only two counts of sexual assault based on penetration of A.R's vagina with his penis.[4] A.R. testified that the penetration in one of those instances was ½ to ¾ of an inch and did not specify with respect to the other instance.[5] ECF No. 17-12 at 14; ECF No. 17-13 at 6-7. The State's expert testified at trial that penetration of the outer portion of the vagina does not necessarily result in evidence of abuse and that the vagina heals very quickly. ECF No. 17-23 at 21; ECF No. 17-24 at 2-3. A.R. testified to four instances of anal penetration, but for only one did she indicate penetration of 1 ½ to 2 inches. ECF No. 17-13 at 2. Here again, the State's expert noted the quick healing process, especially for younger children. ECF No. 17-24 at 3. And with respect to the one count of oral penetration, the expert testified that it would be "extremely unusual" for the act to result in a lasting physical impact to the victim. *Id.* at 3.

Due to the nature of the sexual assaults in this case, evidence regarding the size of Farnum's penis would not have been exculpatory. Consequently, the Supreme Court of Nevada's conclusion that Farnum did not meet *Strickland*'s prejudice prong was not unreasonable. Thus, I must defer to that decision under § 2254(d). This claim is denied.

////

////

---

[4] Of the ten counts of sexual assault for which Farnum was ultimately convicted, only seven involved sexual penetration with his penis (two vaginal, one oral, and four anal). *See* ECF No. 17-22; ECF No. 19-22.

[5] The jury was properly instructed that any sexual penetration, "however slight," is sufficient to find sexual assault. ECF No. 17-21 at 12. *See* Nev. Rev. Stat. § 200.364.

1        *Trial Counsel's Failure to Present Testimony of Retained Expert*

2        Farnum alleges he was deprived of effective assistance of counsel because his trial

3 counsel retained an expert on child interrogation techniques but did not use the expert to assist in

4 his defense. He claims that, on trial counsel's advice, he paid $5,000 to retain an expert, Dr.

5 Esplin, but trial counsel did not have Dr. Esplin produce a written report or testify at trial.

6 According to Farnum, Dr. Esplin's testimony could have cast doubt on the veracity of A.R. and

7 K.S.'s testimony.

8        The Supreme Court of Nevada rejected this claim in Farnum's state post-conviction

9 proceeding.

10        Appellant argues that the district court erred in denying, without an
evidentiary hearing, his claim that trial counsel was ineffective for failing to call
11 an expert at trial. Specifically, appellant claims that trial counsel retained an
expert but failed to present the expert at trial. Appellant failed to demonstrate that
12 trial counsel was deficient or that he was prejudiced. Appellant failed to allege
what this expert would have testified about or how the failure to  call this witness
13 prejudiced him. *Hargrove* [*v. State*, 686 P.2d 222, 225 (1984)]. Therefore, the
district court did not err in denying this claim without an evidentiary hearing.

14

15 ECF No. 21-19 at 3.

16        The record is vague as to counsel's specific reasons for retaining Dr. Esplin. ECF No. 22-

17 10 at 6-12, 31-34; ECF No. 22-12 at 3-4. While Farnum alleges that "Dr. Esplin's expertise is in

18 child interrogation techniques" (ECF No. 53 at 115), the record is devoid of any evidence as to

19 Dr. Esplin's findings in relation to Farnum's case. While the absence of such evidence can be

20 attributed to trial counsel's failure to have Dr. Esplin prepare a written report, that does not

21 excuse Farnum from establishing a reasonable probability of a different outcome to his trial had

22 counsel presented testimony from Dr. Esplin. *See Strickland*, 466 U.S. at 694. Accordingly, the

23 Supreme Court of Nevada's denial of this claim due to lack of prejudice was not unreasonable.

24 The claim is denied.

25        *Trial Counsel's Failure to Present a Viable Defense*

26        Farnum alleges he was deprived of effective assistance of counsel because his trial

27 counsel presented a defense based on the lack of physical or medical evidence to corroborate

28 A.R.'s allegations and the unreliability of A.R. and Monica's testimony. He claims the former

1   was ineffective assistance because a finding of guilt for sexual assault may be based on a

2   victim's testimony alone without any corroborating evidence.  With respect to the latter, he

3   argues that counsel did not use available evidence or witnesses to undermine the State's

4   witnesses.

5          In Farnum's state post-conviction proceeding, the Supreme Court of Nevada addressed

6   the first portion of this claim as follows:

7          Farnum argues counsel was ineffective for presenting a legally invalid
       defense.  Farnum failed to demonstrate deficiency or prejudice.  He asserts that
8      counsel's focus at trial on the lack of physical evidence was inherently flawed
       because physical corroboration is not necessary to find guilt.  Farnum is mistaken.
9      Counsel appropriately argued that the lack of physical corroboration raised a
       reasonable doubt as to whether any of the crimes occurred.  The argument was
10     only a portion of counsel's strategy, which also focused on discrediting A.R. and
       her mother.  Farnum failed to demonstrate that counsel's tactical decision fell
11     below the reasonableness standard enunciated in *Strickland* or that it is likely the
       verdict would have otherwise been different. *See Dawson*, 108 Nev. at 117, 825
12     P.2d at 596.  Accordingly, we conclude that Farnum is not entitled to relief on this
       claim.
13

14   ECF No. 22-34 at 5-6.  The court also rejected Farnum's claim about counsel not calling

15   witnesses to attack the credibility of the State's witnesses:

16          Farnum argues that counsel was ineffective for failing to support the
       theory of defense with witness testimony.  Essentially, the witnesses offered by
17     Farnum at the evidentiary hearing stated that, if called, they would have testified
       that Farnum was never alone with the victims, that A.R.'s mother was
18     encouraging her daughter to make up stories of sexual abuse out of a desire to be
       a bigger part of Farnum's life, that A.R.'s mother was a liar who consistently
19     made false allegations of sexual abuse, and that A.R. was sexually troubled before
       and after meeting Farnum.  Farnum failed to demonstrate deficiency or prejudice.
20     The district court determined that counsel made strategic choices not to call these
       witnesses for a variety of reasons-either because they were not credible, the
21     testimony would not have been admissible, or the witness would have focused the
       jury's attention on the more sensational elements of the case that counsel was
22     attempting to avoid.  The decision whether to call a witness is a proper exercise of
       counsel's discretion and Farnum failed to demonstrate that counsel's decisions
23     fell below the reasonableness standard enunciated in *Strickland* or that it was
       likely the verdict would have otherwise been different. *See Rhyne v. State*, 118
24     Nev. 1, 8, 38 P.3d 163, 167 (2002) (noting that "the trial lawyer alone is entrusted
       with decisions regarding legal tactics such as deciding what witnesses to call").
25     Accordingly, we conclude that Farnum is not entitled to relief on this claim.

26   ECF No. 22-34 at 6.

27          Given the circumstances of this case, I do not agree with the Supreme Court of Nevada's

28   assessment of counsel's decision to focus on the lack of physical or medical evidence as defense

12

strategy.  As noted above, any sexual penetration, however slight, is sufficient to establish sexual assault under Nevada law. *See* Nev. Rev. Stat. §§ 200.364 and 200.366.  Thus, the absence of physical or medical evidence was not likely to be an effective defense.  Discrediting the State's witnesses, on the other hand, was not only a reasonable strategy, it may have been the only one available.

The reasonableness of counsel's defense strategy aside, the obstacle preventing habeas relief is, once again, Farnum's failure to show a reasonable probability that, but for counsel's deficient performance, the outcome of his trial would have been different.  At his post-conviction evidentiary hearing, Farnum presented the testimony of five witnesses who he claims could have assisted his defense: his wife (Alise Farnum), his sister (Kim McEdwards), a friend and neighbor of Farnum's father (Shirley Grimsley), Monica's former employer and friend (Eva Raleigh), and Monica's co-worker and friend (Lynn Raleigh).[6]

Based on their testimony at the evidentiary hearing, these potential witnesses would not have been able to provide evidence that significantly improved Farnum's chances for a better outcome at trial.  For example, Kim McEdwards testified she would have testified that Farnum was not alone with the kids because she was always present in the home. ECF No. 22-11 at 28. She conceded, however, that she only lived with the Farnums for two or three months during the several years the abuse was alleged to have occurred. *Id*. at 28-29.  Testimony from Lynn and Eva Raleigh about A.R. acting out sexually before meeting Farnum was not compelling and would not have appreciably undermined the State's case. ECF No. 22-11 at 32-34, 42.  Similarly, for reasons already discussed, testimony about Monica's credibility and prior false allegations of abuse would have had limited impact, to the extent it was even admissible.  Lastly, obvious bias aside, Alise Farnum did not testify to any exculpatory facts at the evidentiary hearing other than that she was not aware of any instances of Farnum picking up Monica's kids from day care or school. ECF No. 22-10 at 41-51; ECF No. 22-11 at 1-12.  Thus, the Supreme Court of Nevada's denial of this claim due to lack of prejudice was not unreasonable.  The claim is denied.

[6] Lynn Raleigh is also Farnum's former sister-in-law and testified at trial as a defense witness under the name Lynn Farnum.

IV. CONCLUSION

Farnum has not demonstrated that he is in custody in violation of his rights under federal law. Therefore, I deny his petition for a writ of habeas corpus.

*Certificate of Appealability*

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires me to consider issuing a certificate of appealability (COA)., I have *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

I decline to issue a certificate of appealability for my resolution of any procedural issues or any of Farnum's habeas claims.

I THEREFORE ORDER that Farnum's second amended petition for writ of habeas corpus (ECF No. 53) is DENIED. The Clerk shall enter judgment accordingly and close this case.

I FURTHER ORDER that a certificate of appealability is DENIED.

DATED THIS 23rd day of February, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

14